*JAMES McLEOD v. C. W. BULLARD and others.

*Production of Deed—Evidence of Judgment—Fraud—Evidence of Handwriting—Trial—Mortgagor and Mortgagee— Burden of Proof.*

1. Under the law of this state, the courts have power to require the production of documents and private writings containing evidence pertinent to the question at issue.
2. A certified transcript of a judgment is sufficient evidence to prove the existence of the judgment..
3. Where the plaintiff alleged that while drunk he was induced by the fraudulent representations of the defendant to make him a deed for land, the defendant saying it was only an arbitration bond; *Held*, in an action to cancel the deed; (1) It being proved, that plaintiff was in the habit of getting drunk, and in connection with the other facts, proved in this case, it is competent to show, that the defendant kept a bar-room. (2) In corroboration of plaintiff's testimony, it is admissible to show that soon after the deed was signed, the plaintiff.' stated, to,

---

*A SHE, J., having been of counsel, did not sit on the hearing of this case.

witness that he understood it to be an arbitration bond. (3) And to show by an expert whether there was any difference between two signatures of the plaintiff—the one to said deed, and the other to an affidavit filed in the cause.

4. Where fraud is alleged in the execution of a deed, the consideration set forth therein may be contradicted by parol. Want of consideration and inadequacy of price are some evidence of fraud.

5. The refusal to allow a letter written by one member of a firm to be introduced in evidence to contradict the testimony of a witness (the other member of the firm), is not error where it appeared that its contents related to other than partnership matters and that witness had not authorized it and knew nothing of it.

6. Upon trial of an issue of fraud, evidence that defendant purchaser at execution sale stated he was buying the land for the benefit of plaintiff (debtor) thereby suppressing competition among bidders, is admissible.

7. Only such issues as are raised by the pleadings should be submitted to the jury.

8. Where a mortgagee buys the equity of redemption of his mortgagor, the law presumes fraud and the burden of proof is upon the mortgagee to show the *bona fides* of the transaction.

(*Branson* v. *Fentress*, 13 Ired., 165; *Justice* v. *Bank*, 83 N. C., 8; *Scott* v. *Bryan*, 73 N. C., 582; *Powell* v. *Heptinstall*, 79 N. C., 206; *Darden* v. *Skinner*, 2 Car. Law Rep., 279; *Futrill* v. *Futrill*, 5 Jones Eq., 61; *Hartly* v. *Estis*, Phil. Eq., 167; *State* v. *Bowman*, 80 N. C., 432; *Neely* v. *Torian*, 1 Dev. & Bat. Eq., 410; *Bullinger* v. *Marshall*, 70 N. C., 520; *Mulholland* v. *York*, 82 N. C., 510; *Chapman* v. *Mull*, 7 Ired Eq., 292; *Lea* v. *Pearce*, 68 N. C., 76; *Whitehead* v. *Hellen*, 76 N. C., 99, cited and approved.)

Civil Action tried at Fall Term, 1880, of Richmond Superior Court, before *Avery, J.*

The plaintiff alleges:

1. That in November, 1870, one A. A. McKethan, having recovered a judgment against him in Cumberland superior court, caused his land, lying in Richmond county, to be levied upon and advertised for sale thereunder; that wishing to save his land, he placed an amount of money sufficient to satisfy said judgment in the hands of the defendant, Charles W. Bullard, who agreed to attend the sale as

the agent of the plaintiff, and buy in the land for him; that said Charles W. did attend the sale and buy the land with the plaintiff's money, but took the deed in his own name; that by pretending, at the sale, to be buying it for the plaintiff, the said Charles W. succeeded in suppressing the bidding for the land and thereby was enabled to buy it at an under-value.

2. That on the 23d of January, 1873, the said defendant, Charles W. Bullard, fraudulently induced the plaintiff to make him a deed to the same land, by representing to him that it was only an agreement to submit all matters of account between them to arbitration—the plaintiff at the time being so drunk as to be incapable of understanding what he was doing.

3. That in 1870, the plaintiff gave a mortgage to the said defendant, Charles W., to secure advances for agricultural purposes, under which he had received some small advances; but that said defendant had taken possession of his land; and the rents thereof, together with some payments in money, had not only been sufficient to discharge said advances, but to bring the said defendant in debt to the plaintiff.

Thereupon the plaintiff asks that the two deeds—the one from the sheriff to said defendant, and the other from himself to the defendant, dated the 23d of January, 1873—may be decreed to be cancelled; that he recover of the defendants the possession of the lands, and that an account be taken of the rents received by said defendant and the payments made him.

The defendant, Charles W., admits in his answer the execution of the mortgage as alleged by the plaintiff, but says there is a large sum due under it to himself, for advances made the plaintiff; and he denies all the other allegations made in the plaintiff's complaint.

1 Exc. When the case was called for trial and before the

jury were empanelled, the plaintiff referred to an affidavit which he had filed at spring term, 1875, alleging that an inspection of the deed of the 23d of January, 1873, was necessary to him on the trial of his cause; and to a motion then made that the defendant should be required to produce it—which motion had been continued by the court; and he moved the court to order the defendant to produce the deed, alleging that the face of the deed itself furnished some evidence of the fraud practiced in procuring its execution. The defendant objected to this upon the ground that the plaintiff had not prosecuted his motion ; and insisted that time should be given him to answer the affidavit. The judge then inquired of the defendant's counsel what reason the defendant would assign in his answer, if allowed the time to make one, why the deed should not be produced and inspected as asked for, saying that if the reason seemed a valid one, he would extend the time; to which the counsel replied that he expected to set forth in his answer that the allegations of fraud in the affidavit and complaint were not true. The judge thereupon refused to extend the time to answer and ordered that the deed be produced; to which the defendants excepted.

2 Exc. The plaintiff, being introduced as a witness in his own behalf and having testified that he was indebted to A. A. McKethan, was about to speak of said McKethan's having obtained a judgment against him in Cumberland superior court, when the defendants objected. The plaintiff then offered in evidence a transcript of such judgment of the superior court of Cumberland, which had been filed and docketed in the superior court of Richmond county ; to which the defendants objected, and upon their objection being overruled and the said transcript admitted in evidence, they excepted. The plaintiff then testified that in November, 1870, he gave to the defendant, Charles W. Bullard, three bales of cotton to sell and satisfy the McKethan

judgment; that he and said defendant went together to Fayetteville in January, following, and he saw Bullard pay sixty-five dollars to McKethan, who agreed to accept that sum in discharge of his judgment, except the costs; that the sale of plaintiff's land, under this judgment, took place in April next after the payment of the money in January; that he did not attend the sale, but said defendant, Charles W., agreed to do so and buy the land for him.   The plaintiff then offered in evidence the deed of the 23d of January, 1873, being that one which the said defendant had produced at the trial under the order of the court, and testified that he first saw the paper at a place called "Laurel Hill," where the said Charles W. was doing business, and where he had lived up to a short time before, when he and his family had taken possession of plaintiff's house.   In regard to the manner of his taking possession of his house, the plaintiff testified that, on one occasion, previous to the execution of the deed of the 23rd of January, the other defendant, W. W. Bullard, had come to his house and induced the plaintiff to return home with him; and on the next day, by one pretense or another, had prevailed on him to go to several other places with him, so that plaintiff did not reach his own home until after dark on the second day; that, upon getting there, he found the defendant, Charles W., and his family, occupying his house, and his own things removed to another apartment; that this was the first intimation he had of any purpose to take possession of his place, and he had never consented that the same should be done; and the fact that it was done had the effect to cause him to drink to great excess; that soon thereafter, the defendant, Charles W., said to plaintiff that he wanted the matters between them settled and was willing to compromise them, and proposed that they should go together to Laurel Hill, to which plaintiff assented; that he was drunk before he started, and

after getting to the place (which they did about 9 o'clock, a. m.), he got more spirits from said defendant and drank it.

3 Exc. The plaintiff then proposed to prove, by himself as witness, that the said defendant had a bar-room at Laurel Hill, to which the defendant objected, and upon his objection being overruled, excepted. Plaintiff then testified that said defendant did keep a bar-room at the place, and that he furnished the plaintiff with spirits therefrom on that day, by the use of which he became so drunk as to be incapable of knowing what he did; and that while in that condition, he was induced to sign the deed, which had been prepared by J. C. Davis, who was the attorney for the defendant, and whose name is signed as the subscribing witness to the same.

4 Exc. The plaintiff also proposed to ask this witness what consideration, if any, he received for executing the deed, to which the defendants objected, and upon their objection being overruled, excepted. The plaintiff then testified that he did not receive a cent in the way of consideration for signing the deed, and was not to do so.

5 Exc. On his cross-examination, the plaintiff was asked by defendants' counsel whether two-thirds of the cotton furnished to Bullard did not belong to the plaintiff's tenants and the proceeds thereof paid to their use? Whether the proceeds of the other third had not been, by the express agreement between the parties, applied to plaintiff's indebtedness to said Bullard? Whether he was not still indebted to Bullard for supplies furnished under the mortgage? Whether he had not got his supplies from Bullard for two years before the deed was made; and whether the deed was not made in consideration of his indebtedness to Bullard? All of which questions he answered in the negative, except that he admitted that he had received from Bullard some supplies which had been more than compensated for by the use of his land by Bullard. On his re-direct examination, he was asked by his counsel,

whether he owed said Bullard anything before the execution of his mortgage to him; to which the defendant objected, and upon his objection being overruled, excepted. Plaintiff then testified that he owed Bullard nothing prior to the execution of the mortgage; that about the time the deed was executed at Laurel Hill, Bullard claimed the plaintiff owed him some two hundred and fifty dollars, but would never furnish witness a statement of his account; and that in fact, Bullard was at the time indebted to him. A. A. McKethan was then introduced as a witness for the plaintiff, and, after testifying to the fact that he had recovered the judgment against the plaintiff, and the levy of the execution upon the land, and of his having written to the plaintiff of his willingness to accept from him the principal of his debt and the costs, he stated that plaintiff and Charles W. Bullard came together to Fayetteville and paid him sixty-five dollars, which was his principal; and that he wrote the sheriff, whenever the costs were paid, to return the execution satisfied; and that there was some talk, then, between the plaintiff and Bullard whether it would not be better for the plaintiff to have the land sold. On his cross-examination, this witness stated that the debt against the plaintiff belonged to himself alone, and not to A. A. McKethan & Son, which firm was composed of witness and his son; that his son had, of course, authority to bind the firm, but had no general authority to manage the business of witness outside of the firm. The defendants' counsel then handed witness a letter, which, after inspecting, he said was in his son's handwriting, but that he had never authorized him to write it and that he had never seen it before—the letter was in the firm name.

6 Exc. The defendants' counsel then offered to read the letter to the jury, alleging that it contained matter contradictory of his evidence on trial; but on objection by the plaintiff, was not permitted to do so, and thereupon they excepted.

7 Exc. John A. Long was introduced by the plaintiff, and testified that he attended the sale of plaintiff's land by the sheriff, and made a bid for it. That C. W. Bullard took him to himself, and told him that he was bidding for the plaintiff and asked him not to bid against him, which he agreed to do. On his cross examination, the counsel for the defendant asked the witness several questions with a view to contradict or discredit him. Maj. Long was then introduced by the plaintiff, and testified that he attended the sale with the intention of buying the land, but did not bid. The plaintiff's counsel then proposed to show that the reason for his not bidding was, that when he went up to the place of sale, something was said in the crowd standing around (which crowd was composed of the defendant, C. W. Bullard, and seven or eight others) that induced him to believe that said Bullard was bidding for the plaintiff; which evidence, as explained by counsel, was offered with the double view of corroborating the testimony of the previous witness, John A. Long, and of showing that the impression that Bullard was buying for the plaintiff was either created by him, or allowed by him to exist; and thereby he obtained the land at less than its value. The defendant's objection was overruled and they excepted. Witness then testified that he did not bid for the land, because he heard it said in a crowd of seven or eight persons standing at the place of sale (C. W. Bullard being one of them) that said Bullard was bidding for the plaintiff; that he could not remember whether Bullard made the remark or some one else, but that it was said when he was present, standing close around; and but for the remark, witness would have given much more for the land than it brought.

8 Exc. D. W. Morrison was the plaintiff's next witness, and testified that he attended the sale for the purpose of buying the land, but did not bid more than once for it. The plaintiff's counsel then made the same offer of proof and for

the same purpose as in the case of the last witness, when the defendant objected, and, upon their objection being overruled, excepted.  Witness then stated that he got the impression that the defendant, Bullard, was bidding for the plaintiff from something that was said, either by said Bullard or John A. Long, at the place of sale; that it was said by some one in a company of some eight or ten persons standing about the place—Bullard being one of them.  But for this impression, he would have bid more for the land than it brought.

9 Exc.  The plaintiff then introduced J. C. Davis, the subscribing witness to the deed of the 23d of January, 1873, and after examining him as to its execution and the plaintiff's condition at the time, and as to what was said about its being an arbitration bond, proposed, in order to corroborate the evidence of the plaintiff, to show by the witness what was said to him by the plaintiff a short time after the transaction, about his having signed the instrument under the belief that it was only an agreement to submit the matters of account between the parties to arbitration; to which the defendants objected, but the court overruled their objection; and the witness then stated that within a week after his signing the deed, the plaintiff came to witness and said to him that it was reported in the neighborhood that he had signed a quit-claim deed to his land, but that he understood it to be an arbitration bond.  Defendants excepted.

10 Exc.  W. J. Everett was next introduced by the plaintiff, and, after qualifying him to speak as an expert as to handwriting, and his ability to distinguish genuine from spurious signatures, the plaintiff's counsel handed him the deed executed 23d January, 1873, together with an affidavit which the plaintiff had made in the cause, and proposed to ask him whether the signatures to both were alike (it being admitted that plaintiff had signed both), with a view to corroborate the testimony of the plaintiff and the witness, Davis,

(both of whom the defendants' counsel had attempted to discredit on their cross-examination) as to the condition of the plaintiff when he signed the deed. To this the defendants objected, but the court admitted the evidence; and witness then testified to a want of resemblance between the two signatures. Defendants excepted.

11 Exc. N. A. McNair was introduced, and plaintiff proposed to ask him the value of the land in controversy, in order to show that the price paid by defendant, Bullard, at the sheriff's sale, and the consideration stated in the deed of 23rd of January, were grossly inadequate; and as tending to show a suppression of bidding at the sale and a fraudulent procurement of the deed. The defendants objected, objection overruled, and witness testified that the land was worth some $3,000 or $3,500. Defendants excepted.

12 Exc. The defendants' counsel asked that an issue might be submitted to the jury as to whether the alleged agreement, on the part of the defendant, C. W. Bullard, to purchase the land for the plaintiff at the sheriff's sale, was in writing; but His Honor declined to submit such an issue upon the ground that the plaintiff had not alleged, or attempted to prove, that there was any such agreement in writing; on the contrary, alleged that it was by parol. Defendants excepted.

13 Exc. Amongst other instructions not excepted to, His Honor charged the jury as follows: "It is a rule of law that a party who alleges fraud must prove it so as to create a belief in the minds of the jurors that the allegation is true; and the burden of proof is ordinarily on the plaintiff alleging fraud and seeking to set aside his deed. If, however, the relation of mortgagor and mortgagee has been shown to exist, and it also appears that, while that relation was subsisting, the mortgagor conveyed his equity of redemption in the mortgaged property to his mortgagee, then the burden of proof would be shifted from the plain-

tiff, and the presumption of law would arise that the conveyance is fraudulent, but this presumption, could be rebutted by the defendants' showing that the consideration of the deed was a fair and adequate one and that there was no fraud practiced." The defendants excepted.

The jury found all the issues in favor of the plaintiff, and from the judgment thereon the defendants appealed.

*Mr. John D. Shaw*, for plaintiff.
*Messrs. Burwell & Walker*, for defendants.

RUFFIN J. 1st Exc. That the defendant, C. W. Bullard, was required to produce on the trial the deed of January 23rd, and was refused further time to answer the plaintiff's affidavit; This affidavit states particularly the circumstances connected with the execution of the deed, and explains how its inspection is necessary to the plaintiff's case, and seems fully to meet every requirement of the rule of the courts in this regard. Whatever doubts may have once existed as to the power of the court to coerce the production of *private writings,* they have been removed so far the courts of this state are concerned, by express statute. The Revised Code, chap. 31, § 82, provides that courts of law shall have power to require the production of papers and documents " in cases and under circumstances where the parties might be compelled to produce them by the rules of chancery;" and the Code of Civil Procedure confers still more ample power upon the courts. § 331. Under these two statutes, the courts have been wont to require the production of every document containing evidence relating to the merits of an action, whenever the justice of the case seemed to require it. *Branson* v. *Fentress,* 13 Ired., 165; *Justice* v. *Bank,* 83 N. C., 8. The defendants had ample notice of the plaintiff's motion, and, indeed, appear to have come prepared to respond to it, from the fact that they had the deed in court,

ready to produce when required; thus proving that there was no necesity for further delay in the matter.

2nd Exc. That a transcript of the judgment of the Cumberland superior court, instead of the judgment-roll, was allowed to be used as evidence: The point in dispute between the parties was not the validity, regularity or consequences of that judgment, but its *existence,* as a mere matter of fact, and for a purpose altogether collateral. For such purpose the certified tranocript of the judgment alone was certainly sufficient, as was said in the case of *Scott* v. *Bryan,* 73 N. C., 582.

3rd Exc. That plaintiff was allowed to speak of the fact that the defendant, C. W. Bullard, kept a "bar-room" at Laurel Hill, when the deed was executed: Taken in connection with other facts deposed to by the witnesses, this was not an immaterial matter. Those other facts were, in substance, that the plaintiff was much addicted to intemperance; that the defendant, knowing this and intending to take advantage of his weakness, sought to inveigle him into executing a deed for his land under the pretence that it was an agreement to arbitrate their differences; that in furtherance of this scheme, he plied the plaintiff with liquor at home, and then persuaded him to go to Laurel Hill, where he had an attorney, ready to prepare the deed and present it for signature just at the moment when the plaintiff might get into a condition the most easily to be deceived. It thus became a circumstance full of significance, that the place selected for the transaction was one where the plaintiff would be exposed to temptation, and where the means for the gratification of his appetite could be given, or withheld, at the will of the defendant. As the jury had to pass upon the truth of those other facts, they were entitled to have the benefit of every circumstance that could possibly throw light upon them.

4th Exc. That the plaintiff was allowed to show that the deed was without consideration.

5th Exc. That he was allowed to testify that he was not, at the time of its execution, indebted to the defendant.

11th Exc. That the witness, McNair, was permitted to speak of the value of the land, to show an inadequacy of consideration.

These three exceptions, relating to kindred matters, are considered together. The technical rule that the recital of the consideration set forth in a deed, cannot be contradicted by parol, does not apply to cases of fraud. *Powell* v. *Heptinstall*, 79 N. C., 206. The distinction is thus drawn in Starkie on Evidence, 671: "The objection to parol evidence does not apply when offered, not for the purpose of contradicting or varying the effect of a written instrument of admitted authority, but when, on the contrary, it is offered to *disprove the legal existence, or rebut the operation* of the instrument. To do this is not to substitute mere oral testimony for written evidence—the weaker for the stronger; but to show that the written ought to have no operation whatsoever—an object which must usually be accomplished by oral evidence." If any authority is needed to support the proposition that a want of consideration and a gross inadequacy of price are each some evidence of fraud, and may, in connection with other circumstances of imposition or oppression, furnish ground sufficient for setting aside a contract, it will be found in any one of the following cases: *Darden* v. *Skinner*, 2 Car. L. R., 279; *Futrill* v. *Futrill*, 5 Jones Eq., 61; *Hartley* v. *Estis*, Phil. Eq., 167, and the numerous authorities cited therein.

6th Exc. That the court refused to admit in evidence the letter from "McKethan & Son": We can discover no principle under which the letter *could* have been received in evidence, offered, as it was, solely for the purpose of contradicting the statements made by the witness, McKethan, at the trial. There was literally nothing to show that he had authorized it to be written, or that he knew of its contents, or, indeed, of its existence, up to the very moment of its pro-

duction on the trial. It is true, it appeared to be in the handwriting of his partner and son, but it related to other than partnership matters; and the father swore that the son had neither a general nor special power to speak for him in this particular instance, and there was no evidence to contradict him.

7th Exc. That the witness, Long, was permitted to testify to the remark made in the company of persons present at the sale, about the defendant's bidding for the plaintiff: If the evidence had left it doubtful whether the remark, though made in defendant's presence, was in fact heard by him, it would have been proper in His Honor, as was said in the case of the *State* v. *Bowman*, 80 N. C., 432, after admitting it to be spoken of by the witness, to have instructed the jury to give it consideration or not, as they might find the fact to be that he heard, or did not hear it. But it is clear, from the statement of the case, that the doubt, which the witness intended to express as existing in his mind, was not whether the defendant heard the remark, but whether he was not, himself, the author of it; and as it was equally competent, whether made by himself or another in his hearing, no such caution was needed at the hands of the judge. Beside this, that such a remark was made at all at the time (there being only eight or ten persons in attendance on the sale), goes to show that all the persons present participated in the belief that the defendant was bidding as the friend of the plaintiff. If so, and thereby the defendant was enabled to purchase the plaintiff's land at an undervalue, it is against good conscience in him to retain an advantage so unduly obtained, even though he had no active agency in creating that belief. It was so held in the leading case of *Neely* v. *Torian*, 1 Dev. & Bat. Eq., 410.

The same reasoning applies to the defendants' eighth exception.

9th Exc. That plaintiff was allowed to give in evidence his statements, made shortly after the transaction, in corroboration of his testimony on the trial: The right to corroborate an impeached witness by proving that, soon after the matter occurred, he had made similar statements in regard to it, is too well established to need the citation of authority in its support. In the case of *Bullinger* v. *Marshall*, 70 N. C., 520, it was decided that the same right exists in favor of a party examined as a witness in his own behalf. "Why should not this follow?" asks the late Chief Justice PEARSON in that case. "It is in conformity to the avowed policy of the statute by which rejection of testimony, on the ground of incompetency, is ignored, and the testimony is to be admitted and weighed by the jury in the scale of credibility."

10th Exc. That the plaintiff was allowed to show by an expert that the signature to the deed differed from his natural and ordinary signature, affixed to an affidavit filed in the cause: The comparison between the signatures to the two instruments was not instituted for the purpose of assailing or supporting the genuineness of either, for both were admitted to have been the work of the plaintiff; and therefore the ruling of His Honor, in permitting it to be made, did not impinge upon the rule of those cases which forbids the comparison of handwritings for such purposes. But it was made solely to ascertain whether there was any discrepancy in the manner of their execution; and, if so, whether that discrepancy could be accounted for by the alleged drunken condition of the plaintiff at the time he signed the deed, and in this way furnish some corroboration to the positive proof which had been offered on that point. Considered in this light, the case seems to come fairly within the line of those cases in which experts have been called to say whether two documents were written with the same pen and ink, and at the same time (34 Penn. St., 365); or

34

whether the different parts of the same instrument were written with the same care and facility (*Demerritt* v. *Randall,* 116 Mass., 331); or whether two documents, supposed to have been written in a disguised hand, were in fact written by the same person. *Reult* v. *Braham,* 4 Tenn. Rep., 497. In all these instances, a comparison of one document with another, or of one part of the same document with other parts, was sanctioned by the courts; and being matters of skill and experience, requiring a practised eye and close observation to determine them correctly, *experts* were used for the purpose. And so, we think, in the present case it required something more than the observation and experience ordinarily possessed by the jurors of the country to be able to perceive the difference between the two signatures exhibited in evidence, and to trace its probable cause.

12th Exc. The refusal of the judge to submit an issue whether the alleged agreement of the defendant, Bullard, to purchase the land for the plaintiff, was in writing: Only those issues should be submitted to the jury which are raised in the pleadings and are necessary to a certain legal determination of the matters in controversy. In the pleadings prepared by the parties in this case, there was no question made as to the nature of the promise, and no suggestion of the statute of frauds, and if there had been the latter it would still have been improper to have allowed the issue asked for to be submitted to the jury, for the reason that, however they might find it to be, it did not even tend towards a disposition of the rights of the parties to the action. Whether the promise be by writing or by word only, if made, it was equally binding on the defendant. *Mulholland* v. *York,* 82 N. C., 510, and the many cases there reviewed in the opinion of the present Chief Justice.

13th Exc. To the charge of the judge, in that he instructed the jury that if, while the relation of mortgagor and mortgagee subsisted between the parties, the defendant (the mort-

gagee) purchased the equity of redemption of his mortgagor, the law presumed it to have been fraudulently done, unless the defendant could show, by a preponderance of testimony, the *bona fides* of the transaction: It is not to be denied that this charge of His Honor is in conflict with the decision of this court as rendered in the case of *Chapman* v. *Mull*, 7 Ired. Eq., 292. In delivering the opinion of the court in that case, the late Chief Justice PEARSON expressly declares that the principles, in relation to dealings between *trustee and cestui que trust*, as adopted by courts of equity, do not apply to the case of mortgagor and mortgagee; but that such parties, there being no dependence or duty of protection involved in their relation, were at liberty to deal with each other, subject only to the ordinary principles. We understand, however, this decision to have been virtually departed from in the case of *Lea* v. *Pearce*, 68 N. C., 76; and in *express terms*, in the case of *Whitehead* v. *Hellen*, 76 N. C., 99; in both of which cases the opinions were delivered by the same learned judge. In the last named case, he uses the following emphatic words: "Courts of equity look with jealousy upon all dealings between *trustees and cestuis que trust;* and if the mortgagor had, by deed, released his equity of redemption to his mortgagee, we should have required the purchaser to *take the burden of proof*, and satisfy us that the man whom he had in his power, manacled and fettered, had without undue influence and for a fair consideration released his right to redeem." In this uncertainty of authority, proceeding from the same high source, we have to look for light from other sources. Bigelow, in his work on Fraud, page 160, says, there are certain relations, termed *relations of confidence*, from the existence of which the law raises a presumption of fraud, in any dealings that may take place between the parties, because of the undue advantage which the situation itself gives to one over the other. Of these "*relations of confidence*," he enumerates eight in number, and

in the following order : Attorney and client; principal and agent; partners; trustees and cestuis que trust; guardian and ward; executors and administrators; mortgagor and mortgagee; parent and child. Thus, he places the relation of mortgagor and mortgagee with the other well defined and universally acknowledged *fiduciary relations.* Upon principle, this should be so. It is due to good faith and common honesty that such a presumption should arise in every case where confidence is reposed, and the property and interests of one person are committed to another. To every such person his *trust* should be a sacred charge—not to be regarded with a covetous eye.

The several exceptions of the defendants are therefore overruled, and the judgment of the court below is affirmed.

No error.                                        Affirmed.