## ALBERT HALL v. E. A. LEWIS.

*Pleading—Dealings between Assignee of Mortgage and Mortgagor—Fraud and Undue Influence.*

1. One who purchases and takes an assignment of a mortgage stands in the same relation to the mortgagor as did the original mortgagee; and his subsequent purchase of the equity of redemption from the mortgagor is presumed to be fraudulent and oppressive.

2. A complaint by a mortgagor to set aside a deed made by him to the mortgagee for the equity of redemption is not defective because it fails to allege that a clause of defeasance was omitted from the deed by fraud, inadvertence or mistake.

3. A mortgagor who conveys his equity of redemption to the mortgagee by absolute deed has a right to redeem, notwithstanding such deed, unless the mortgagee rebuts the presumption of fraud, which such a transaction raises in equity, by proving its *bona fides;* that is, that he had dealt fairly and openly with the mortgagor.

4. A mortgagee who purchases the equity of redemption from the mortgagor, under circumstances which render the transaction one which will not be sustained in equity, has no right to compensation for betterments put upon the property after it was conveyed to him. · He is held to notice of the invalidity of such a purchase and title.

5. It seems that a defendant can make the point that the complaint does not set out a cause of action, or entitle plaintiff to such relief as he demands, by a motion for judgment *non obstante veredicto*, which will be treated as a demurrer.

6. The rule that there should be *allegata* as well as *probata* is one of practice and it is a question " whether this rule will not give way to that great principle of equity that will enforce the specific performance of contracts where the contract is not denied."

7. A parol contract for the sale of land will be enforced if it is not denied. If it is denied, it cannot be proved under the statute of frauds.

CIVIL ACTION, tried before *Graham, Judge*, at the Fall Term, 1895, of SAMPSON Superior Court.

The plaintiff owed a debt, secured by mortgage on land, to one W. A. Dunn, receiver, &c., and applied to the defendant to take up said mortgage debt. The defendant took up said debt and mortgage, paying W. A. Dunn the amount due thereon, which was $80.42, and soon thereafter the plaintiff, under the circumstances detailed in the evidence, executed to the defendant a deed, absolute in form, to the same land, reciting therein a consideration of one hundred and twenty-five dollars, and thereupon the defendant delivered to the plaintiff the said note and mortgage.

The court submitted the following issues to the jury:

" Did the defendant agree with the plaintiff that the defendant would pay off the note and mortgage to the Clinton Loan Association and take a deed in fee-simple for the land, and that it would be as good as a mortgage? Ans., ' Yes.' " (W. A. Dunn was receiver of the said association.)

The defendant excepted to this issue, upon the ground that it appeared on the face of the complaint that both plaintiff and defendant knew at the execution of the deed that the same was an absolute deed, and the fact that the plaintiff executed said deed under the persuasion of the defendant that it would be as good as a mortgage could make no difference. The court overruled this exception, submitted the issue, and the defendant excepted.

The plaintiff, Albert Hall, testified: " The defendant told me that a deed would be cheaper than a mortgage and would be just as good; that all he wanted was his money and interest, and that he did not want the land. Defend-

ant paid Mr. Dunn the amount due on the mortgage, ($80.42,) and Mr. Dunn assigned the mortgage to the defendant. I got Lewis to come with me and paid him $1.50 for coming. He went back home with me and the deed was fixed up; I cannot read writing, and was not informed that $125 was put in it before I signed it. My wife was not at home at the time, but she came next morning, and I told her she must go to Autry, the justice of the peace before whom I signed the deed, and sign it; she did so. Lewis was to wait until November for me to pay him; he said he wanted nothing but his money and the interest. I tendered the money to him in November, but he then claimed that I must pay him $280. Lewis never paid but $80.42 to take up the mortgage, and I did not owe anything else; the consideration of $125 in the deed was put there without my knowledge or consent. Lewis said he would take a deed and would not bother with a mortgage—that a deed would be the same thing."

The defendant here admitted that he had only paid $80.42 to take up the mortgage.

Mrs. Isabella Hall, the *feme* plaintiff, testified : " I was not at home when Mr. Lewis and my husband came back that night, but I came back next morning, and my husband told me he had got Mr. Lewis to take the land in hand. He gave me a paper and I took it to Mr. Autry, J. P. I cannot read. He did not send it to me, nor did any one else."

R. O. Autry, the justice, testified : " I met Lewis and Hall about dark that night, on their way from Clinton, about two miles from Hall's house. Lewis got me to go with him to Hall's house. He said he had paid out $125 that day for Hall, and he wanted the papers fixed while things were hot. Hall's wife was not at home. I put in the $125 at the request of Lewis. No one told Hall the consideration, that

I know of. Hall was not present when Lewis told me he had paid the $125. Next day Hall's wife came and signed the deed. It was not read. Upon leaving she asked me how much was still due on the land, and I told her Mr. Hall said about $80. Hall had told me what a time he had getting it fixed up, but that he had got it down to $80, and Mr. Lewis had paid that."

H. I. Hall testified : "I am no kin to plaintiff. In Spring of 1893 plaintiff told me that he had got his land safe ; that Mr. Lewis had helped him. That Lewis would not take a mortgage ; said that deed would amount to the same thing and be cheaper for both. The place is worth about $300."

Hinton Faircloth testified : "In the Fall of 1893 I heard Lewis say that he would let Hall have his land back when he paid him his money. Hall said that Lewis had taken up the mortgage and was going to give him a chance ; that he had got it down to $80.42."

The defendant testified that plaintiff had come to him in April, 1893, and a few days before his land was to be sold by Dunn. and told him of it, and wanted defendant to let him have money to pay the debt and save the land from sale, and to hold the mortgage until the defendant should be repaid by plaintiff; that he told plaintiff he would not do that, but would buy the land at $125, and would pay off the mortgage, and that plaintiff could arrange the balance of the purchase-money afterwards ; that plaintiff must make him a deed, that he would not take a mortgage ; that plaintiff agreed to this, and they both went to Dunn, and defendant paid the debt and took the mortgage assigned to himself, to hold only until he could get the deed from the plaintiff; that they went home ; plaintiff had the deed executed, and delivered same to defendant, and defendant at the same time delivered to the plaintiff

the Dunn mortgage and note, all in accordance with the understanding of the parties; that after this was done the plaintiff wanted the defendant to give him a chance to buy the land back, and defendant told plaintiff that he could remain on the land until the first of next year and make his crop for the balance of the purchase-money, about forty dollars, after paying some expenses, and that if plaintiff would pay him for the land, $125, by the end of the year he would sell the land back to him and make him a deed. The plaintiff agreed to this, remained in possession until the end of the year, made and gathered the crop, and voluntarily abandoned the possession and built upon and moved to another tract of land; that defendant then took possession of land and has made large and valuable improvements on the land without any notice of any claim on the part of the plaintiff until the commencement of this action. The defendant then offered to prove the nature and value of the improvements made by him on the land before suit. The court, on objection by plaintiff, ruled out the testimony, remarking that a mortgagee was not entitled to anything for improvements he might put on the land. The defendant excepted, and contended that in ruling out this evidence upon the ground indicated, his Honor had anticipated the verdict of the jury upon the issue submitted, to-wit: Was the deed in question intended to operate as a mortgage? and while the question of the admissibility of this evidence was under discussion by his Honor and the defendant's counsel, his Honor remarked that the plaintiff and his witnesses having testified, and the defendant having been examined in his own behalf, and having testified that plaintiff came to him and asked him to take up the mortgage held by the Clinton Loan Association against plaintiff; that he told him that he would pay off the amount

118—33

HALL *v*. LEWIS.

due, $80.42, but would take a straightout deed for the land; that he did pay off the $80.42, and the note and mortgage were signed to him, and that he then had a deed prepared from plaintiff and wife for the land, in which the consideration was expressed at $125, with the assent of the plaintiff; and that defendant, upon the execution of said deed, agreed with the plaintiff that he might redeem said land at $125,—he should charge the jury that if they believed the testimony of the defendant, construed and taken in connection with that offered by the plaintiff, then they should find the said deed, though absolute on the face, was intended as a mortgage, and if they should find that said deed was intended by the parties to serve the place of the mortgage, they should find this issue in favor of the plaintiff. The jury found this issue in favor of the plaintiff. The defendant contended that judgment ought to be entered for defendant, notwithstanding the verdict, for that it appeared in the pleadings and in the evidence that both parties knew at the execution of the deed that it was an absolute deed, and the fact that it was intended to operate as a mortgage would not entitle plaintiff to call on the court to declare it a mortgage.

His Honor refused the contention and gave judgment for the plaintiff. The defendant further excepted to said judgment upon the ground that it appears, in the case made by the plaintiff, that the legal title to said land is in Dunn, the receiver.

Appeal by defendant.

*Mr. J. D. Kerr*, for plaintiff.

*Mr. J. L. Stewart*, for defendant (appellant).

FURCHES, J. : The evidence in this case creates a strong impression upon the minds of the Court of palpable fraud on the part of defendant, from which a Court of Equity

should give relief. After the verdict of the jury, the defendant moved for judgment *non obstante veredicto*, for the reason that the complaint did not state a cause of action in that it did not allege that the condition and clause of defeasance in his deed were " omitted by fraud, inadvertence or mistake," and cites *Norris* v. *McLam*, 104 N. C., 159, for this position. We do not admit that fraud is not alleged in the complaint ; and therefore it does not become our duty to cons'der whether *Norris* v. *McLam, supra,* was put on the first principles of equity or not. It is true that the general rule is that there should be *allegata* as well as *probata.* But this is a rule of practice and the question is, Whether this rule of practice would not give way to that great principle of equity that will enforce the specific performance of contracts where the contract is not denied. A parol contract for the sale of land will be enforced if it is not denied. *Bonham* v. *Craig*, 80 N. C., 226. If it is denied it cannot be proved under the statute of frauds, and, of course, cannot be enforced. But this is because the contract is denied and cannot be proved.

Then, to take this complaint as upon demurrer, why should it not be enforced ? A demurrer admits the facts, and defendant's motion must be put on the same ground. But, if we take it in connection with the evidence of the plaintiff that the defendant agreed to take up the mortgage of the Clinton Loan Association, on which there was only $80.42 due, and to hold it until he could pay him ; that defendant said to plaintiff that he would not take a mortgage from plaintiff to secure him, but would take a deed which would be the same thing in effect, and it would be cheaper for both ; that defendant procured the deed to be written and had the consideration stated to be $125, without the knowledge of defendant, as he alleges ; that it was not read over to him, and he could not read ; that

plaintiff's wife went the next day and signed it without its ever being read to her, and she cannot read, and the justice who took her acknowledgment testified that he did not read it to her, and that after she had signed and acknowledged the same she asked how much was still due on the land, and he told her that her husband had told him " about $80," and that plaintiff continued to live on the land and make a crop.

And now we are asked to say that all this does not amount to an allegation of fraud !

There are some expressions used by the court on the trial that might be subject to criticism but for the *admitted facts* on the part of defendant. For instance, when the defendant offered evidence for the purpose of showing that he had put valuable improvements on the land, and the court in ruling out this evidence remarked " that a mortgagee was not entitled to anything for improvements he put on the land," and when he said that he should charge the jury " that if they believed the testimony of the defendant, construed and taken in connection with that offered by the plaintiff, then they should find the said deed, though absolute on its face, was intended as a mortgage." There was no error in the court's excluding the evidence offered to show improvements. The error, if any, was in the judge's expressing an opinion as to a fact upon which the jury had to pass, and in the court's grouping together the evidence of the plaintiff, " taken in connection with that of the defendant," when defendant contends that the defendant's evidence was contradictory of that of the plaintiff, and the jury should have been so instructed.

But when we consider that the defendant admitted that he, at the request of plaintiff, paid the Clinton Loan Association $80.42, and had the mortgage and debt assigned to him, the law at once created the fiduciary relation of mort-

gagor and mortgagee between the plaintiff and the defendant. And this being so, the deed from plaintiff could only be a purchase of plaintiff's reversionary interest in the land, which the law presumed to be fraudulent, and the burden was upon the mortgagee (the defendant) to show the *bona fides* of the transaction. *McLeod* v. *Bullard*, 84 N. C., 515. And it was not only the right but the duty of the court to have instructed the jury to that effect. And we find nothing in what the judge said that goes to the extent of the rule laid down by the Court in *McLeod* v. *Bullard, supra.* So, if there was error in what the judge said as pointed out by defendant, it was harmless, as it was the duty of the judge to tell the jury that the law presumed the transaction to be fraudulent on the part of defendant, and it devolved on him to rebut this presumption by proving the *bona fides* of the transaction—that is, that he had dealt fairly and openly with plaintiff—that he had explained why it was that he caused $125 to be stated as the consideration when he only paid $80.42—that it was a *bona fide* purchase for $125—why it was that he charged the plaintiff $1.50 for his time and trouble in going with plaintiff to take up the old mortgage—that he had given a reasonably fair price for the land, (shown to be worth $300 by uncontradicted evidence,) and that he had paid the plaintiff at least the difference between $80.42 and $125.

And as defendant had offered no evidence as to the $1.50 paid him for his time, and no evidence to show or tending to show that the land, for which he paid only $80.42, is not worth $300, it was the duty of the court to charge the jury that defendant had not rebutted the presumption of fraud the law put upon him, and it was their duty to return a verdict for plaintiff—even to say nothing of the other evidences of fraud in the case, upon which defend-

ant's evidence hardly amounted to a *scintilla*, a shadow, a pretense.

In our opinion this is not a case in which defendant is entitled to pay for improvements. He was bound in law to know his title was not good, and there was no error in refusing to hear evidence as to improvements. The judgment must be affirmed.

Affirmed.