WHITTEN v. TELEGRAPH CO.

(Filed May 16, 1906).

*Telegraphs—Production of Message—Evidence—Hearsay—Damages.*

1.  In an action for damages for failure to promptly deliver a telegram, when the plaintiff proposed to prove the contents of the telegram by parol and the defendant objected, the court had the right to order the production of the telegram, which defendant's counsel admitted he then had in his possession.

2.  The court has power to order the production of a paper, which contains evidence pertinent to the issue and which is in the possession or control of the adverse party.

3.  In an action for damages for mental anguish in failing to promptly deliver a telegram, announcing the illness of plaintiff's father, it was not competent for the plaintiff to testify that when he arrived at his home he was told that his father, who had just died, had inquired for him and expressed his desire to see him before he died, as this was hearsay, but if the person who gave the plaintiff the information had been introduced as a witness and testified as to what the father had said and as to his conversation with the plaintiff in regard to it, the evidence would have been competent on the question of damages.

ACTION by S. E. Whitten against Western Union Telegraph
Co., heard by *Judge O. H. Allen* and a jury, at the January
Term, 1906, of the Superior Court of McDOWELL.

On October 18, 1904, at 7:30 p. m., the plaintiff's brother
delivered to the defendant at Greenville, Tenn., a telegram
addressed to the plaintiff at Marion, N. C., which read as
follows: "Father cannot last much longer; think it best to
come." The defendant was requested to rush the message
and there was evidence tending to show that, if the defendant
had not handled the message negligently, it would have been
received by the plaintiff in time for him to have taken the
next train out from Marion and to have reached the bedside
of his father before he died. The negligence of the defendant
was denied in the answer, but admitted on the trial. Only
two questions need be stated: 1. The plaintiff proposed to
prove the contents of the telegram by parol. The defendant
objected, whereupon the plaintiff asked for a rule on the de-
fendant's counsel, who admitted he then had the original in
his possession, to produce it. The defendant's counsel agreed
to produce it, if the plaintiff would introduce another paper
which the defendant's counsel then had in his hand. This
the plaintiff refused to do, and the court having intimated
that the rule would be issued and the defendant be given time
to produce the telegram, the defendant's counsel submitted to
the ruling and excepted, at the same time stating that he
would waive notice and produce the paper, which he did.
2. There was evidence tending to show that the plaintiff's
father knew the plaintiff had been telegraphed to come, and
more than once he had expressed his anxiety to see and talk
with him before he died. The plaintiff testified to the mental
suffering he had endured, when he arrived at his home in
Greenville and was told that his father, who had just died,
had called for him before his death, and he found that by
reason of the negligence of the defendant, he was deprived of
the privilege of seeing his father. This evidence was ad-

mitted over the objection of the defendant and an exception noted. The following are the issues with the answers thereto: 1. Was the defendant guilty of negligence as alleged in the complaint? Yes. 2. Did the plaintiff contribute to his own injury? No. 3. What damage, if any, has the plaintiff sustained on account of mental anguish alleged in the complaint? $500. There were certain instructions prayed by the defendant as to the first issue, and they were given, and others, as to the second issue, which were substantially given. Judgment was entered upon the verdict and the defendant appealed.

*Sinclair & Johnson* and *W. T. Morgan* for the plaintiff.
*F. H. Busbee & Son, W. R. Whitson* and *G. H. Ferons* for the defendant.

WALKER, J., after stating the case: If there ever was any merit in the first exception there is none now, as the negligence of the defendant was admitted, after the objection to the ruling was made, and it was agreed that the first issue should be answered 'yes.' But if there had been no such admission, the exception could not be sustained. It is too clear for discussion that the court had the right to order the production of the telegram and that it exercised its power in that respect reasonably and with moderation. The power thus to order the production of a paper, which contains evidence pertinent to the issue and which is in the possession or control of the adverse party, has long been recognized to exist in courts of common law or equitable jurisdiction. It is essential to the due administration of justice and there is nothing in it prejudicial to the rights of the other party under the law. McKelvey on Evidence, 350. It is expressly given by statute. Code, section 1373; Revisal, section 1657. See also Clark's Code, section 578, and notes; *McDonald v. Carson,* 95 N. C., 377; *McLeod v. Bullard,* 84 N. C., 515. As was said in the

latter case, "The defendants had ample notice of the plaintiff's motion, and indeed appear to have come prepared to respond to it."

The second exception is well taken. It was not competent for the plaintiff to testify as to what he was told, when he arrived at his home, his father had said. This was nothing but hearsay. It was argued that it was a part of the *res gestae,* and was corroborative of the evidence that his father knew that the plaintiff had been notified to come home and had expressed himself as anxious to see the plaintiff. We are unable to see how it is competent on either ground thus stated. If the person who gave the plaintiff the information had been introduced as a witness and testified as to what had occurred, that is, as to what the father had said and as to his conversation with the plaintiff in regard to it, the evidence would have been competent on the question of damages, especially if it had been shown that the mental anguish of the plaintiff had been increased by reason thereof. Such a communication to the plaintiff must in some degree have aggravated his suffering. He was necessarily pained to discover, when he arrived in Greenville, that his father had died without his having had the consolation of seeing him. How much more would his disappointment and distress be intensified by the knowledge that his dying father had inquired for him and expressed a desire to see him before the end had come, and was filled with anxiety lest he should arrive too late. It tended to show the existence of deep paternal affection and also the tender and close relation subsisting between father and son, and consequently the natural effect that the knowledge of the inquiry, which the father had made for him, would have upon the son. It is not unreasonable to suppose that the disappointment of having failed to reach his home, under such circumstances, until it was too late to see his father alive and to receive his final blessing and his parting message, which he could well infer from what he had heard, awaited

him, added something to the poignancy of his sorrow, and if so he is entitled to have it considered. The defendant must have contemplated from the very nature of the message that a failure to deliver it would cause mental anguish, and the damage proposed to be shown by the evidence is such as may fairly be considered to be within the range of those damages contemplated by the parties, as it should have been reasonably expected to result from the defendant's wrong in failing to transmit and deliver the message in proper time. Such additional anguish as the plaintiff may have suffered by hearing what his father said, is not unusual in such cases, and cannot be regarded as of such an exceptional and extraordinary nature as to require that it be brought specially to the attention of the company. We find that the question has been decided in *Telegraph Co. v. Evans,* 1 Texas Civ. App., 299, in which case the court says: "This suit was instituted to recover damages for the mental anguish claimed to have been caused appellee's wife by her failure to see her son before his death, and we are not prepared to say that the jury would not be authorized to conclude that this anguish would be increased by the knowledge that her son wished to see her and was unable to do so. In such case the damage would be for the injury thereby caused the wife, and not for any damage that might have been suffered by the son." The case of *Tel. Co. v. Lydon,* 82 Texas, 366, indirectly furnishes support for our ruling. "While juries (says the court in that case) in the absence of any evidence on the subject may act upon their own knowledge of the affection subsisting between a mother and her son, still the admission of evidence upon the subject may be proper, and we cannot say that proof of a special regard, felt and shown by a mother for one of her children, may not be properly considered by the jury, in connection with other circumstances in estimating the feelings of the child toward the parent." If it be competent to show the actual state of feeling between parent and child, why is it

not equally competent to prove a statement of the father's expression of his anxiety to see his son, which was brought to the knowledge of the latter, as tending to show the father's affection for the plaintiff and the naturally increased disappointment of the plaintiff that he had, by the negligence of the defendant, been unable to gratify his father's dying wish? The greater the affection existing between them, the greater the anguish of the one when deprived of the consolation which comes from personal communion with the other in the supreme moment of his death. A question somewhat similar to this was decided in *Bright v. Tel. Co.*, 132 N. C., 317, where we held that in order to show the existence of mental anguish, it was competent to prove the close relation of the parties concerned, such as that the one stood in *loco parentis* to the other, and further, and what is more to the point in this case, that the person thus standing in that relation to the plaintiff, whose husband had just died, would have responded to the message, if it had been delivered, and gone to her succor and as far as he could assuaged her grief by his presence and sympathy. The cases cited by the defendant's counsel seem to have been decided upon grounds quite distinct from those which should exclude the evidence because of irrelevancy, and the cases we have cited from the same State are much more to the point. We have considered the relevancy of the evidence, if properly presented to the court, as it may and no doubt will become a question in the case at the next trial. The defendant is entitled to another jury as to the third issue, for it was not competent to prove what the father said, by hearsay.

New Trial.