*JAMES McLEOD v. C. W. BULLARD and others.

*Mortgage—Sale of Equity of Redemption to Mortgagee—Burden of Proof—Judge's Charge.*

1. Where a mortgagor conveys his equity of redemption to the mortgagee (the deed for the land contaîning a power to foreclose by sale) and the former brings an action for possession, and an account of the rents, and cancellation of the deed, the burden of proof is upon the mortgagee to show by evidence other than the deed itself, that the transaction was fair and that he paid for the property what it was worth, in order to rebut the presumption of law that the conveyance is fraudulent—a mortgagee being included in the class of trustees to whose dealings with their *cestuis que trust* the presumption is applied.

2. A proposition of law, given in a charge to the jury, which is in terms too comprehensive or without its necessary limitations, cannot for that reason be assigned for error, if it be appropriate to the case and not calculated to mislead.

(*Chapman* v. *Mull,* 7 Ired. Eq , 292 ; *Allen* v. *Bryan, Ib.,* 276; *Baxter* v. *Costin,* Busb. Eq., 262 ; *Whitehead* v. *Hellen,* 76 N. C., 99 ; *Taylor* v. *Heggie,* 83 N. C., 244, cited and approved.)

Petition to rehear filed by defendants and heard at February Term, 1882, of The Supreme Court.

The facts are fully stated in same case, 84 N. C., 515.

*Messrs. Shaw, McNeill,* and *Hinsdale & Devereux,* for plaintiff.

*Messrs. Burwell & Walker,* for defendants.

Smith, C. J. At the trial of this cause in the superior court, the jury were charged that while ordinarily he who alleges fraud in a transaction must prove it, yet, when the relation of mortgagor and mortgagee exists, and while it ex-

---

* Ashe, J., having been of counsel, did not sit on the hearing of this case.

ists, the former conveys his equity of redemption in the land to the latter, the burden of proof is shifted from the mortgagor to the mortgagee, and the presumption of law will arise that the conveyance is fraudulent, but the presumption may be rebutted by showing that the consideration of the deed was fair and adequate, and no fraud actually practiced. This ruling approved on the former hearing, we are now asked to review and reverse, as erroneous in law.

The substance of the instruction is, that between such parties, something more is required than the mere production of the deed and proof of execution, to repel the inference that the conveyance or release of the equitable estate of the mortgagor, was not fairly obtained, and to give it validity and operation.

The argument has been full and exhaustive, and numerous cases cited, examined and criticised, to show that a mortgagee is not included in the class of trustees to whose dealings with their *cestuis que trust* the presumption is applied, and especially when the power of sale is not conveyed in the mortgage deed. The benefit of this distinction between mortgages with and without a power of sale cannot be made available to the defendants, whatever of force it may possess, since the deed is not an exhibit, nor its provisions set out in the record so that we can see whether it belongs to the one or the other class, and it is a well settled rule, that one who alleges error must show in what it consists, and hence the plaintiff should make it appear that no such power was vested in the mortgagee and the decision heretofore rendered was predicated upon the idea that the mortgage did not contain a power of sale, and nothing now appears to controvert that fact. We know that the prevalent practice is to insert such a provision in a mortgage, as in other conveyances to trustees to secure debts, and more especially in such as are intended to secure future advances, in order that the coerced repayment may be prompt and in-

expensive, and upon such an instrument, in the absence of evidence to the contrary, we must assume the instruction to have been predicated; and if such was not the character of the mortgage, it was the duty of the appellant to make the fact appear.

The discussion has been confined to the abstract proposition, announced in the charge to the jury as a rule of law, and without regard to the facts of the case then depending. But a proposition of law, laid down in terms too comprehensive, or without its necessary limitations, if appropriate to the case and not calculated to mislead, cannot for that reason be assigned for error, because it could not be prejudicial to the complaining party. It is necessary therefore to consider the aspect of the case and the antecedent relations of the parties, as they were presented by the evidence when the instruction was given.

The essential allegations of the complaint are set out in the report of the case, (84 N. C. 515) and need not be repeated. The findings of the jury upon the issues outside of that to which the instruction is pertinent, in a condensed form, may be thus stated :

The debt due to McKeithan, the money to pay which had been furnished by the plaintiff, was used in obtaining an assignment of it, and with the plaintiff's consent, to the end that the land might be sold under execution and bid in for the plaintiff, and this was a mutual agreement between them. At the sale the defendant suppressed competing bids by representing to those present that he was buying for the plaintiff, and becoming the purchaser at a price far below its value, which is estimated by the jury at $3.000, took the sheriff's deed conveying the title to himself. The allegations made by the plaintiff in regard to the agreement for the purchase of the property at the sheriff's sale, and any equity set up in that behalf, are expressly denied. The deed conveying the defendant's equity of redemption, or as ex-

pressed in the language of the mortgagor in the instrument, "all my legal and equitable interest in and to a certain tract of land," describing it, without mention of the antecedent mortgage, or the equity arising out of the parol contract in regard to the sale under execution, recites as its consideration the discharge of a debt of no specified amount and the sum of $400 then paid. It was furthermore charged and denied that this release of January 3rd, 1873, had been procured by the defendant's misrepresentation that it was a bond for the arbitration of their unsettled matters, and from the plaintiff when so drunk that he did not understand what he was doing or the consequences of his act.

These then were the relations between the parties, when the jury were directed to require some evidence beyond that furnished by the deed itself, that its consideration was fair and adequate, and that there was no fraud practiced in procuring its execution. Surely if the presumption from a supposed undue influence exercised, can arise in any case and call for explanation, it does arise out of the fiduciary relations subsisting between these parties.

But considered as an abstract proposition disconnected with the special attending circumstances, we do not hesitate to affirm its correctness in its application to dealings between the parties to a mortgage containing a power of sale vested in the mortgagee, to the same extent as to other fiduciary or confidential relations. It becomes therefore necessary to refer to our own adjudications and other authorities bearing upon the question.

In *Chapman* v. *Mull*, 7 Ired. Eq., 292, the late Chief Justice declares in express words that a mortgage does not create the trust to which the rule applies, that presumes a deed to have been fraudulently obtained, and requires affirmative support in order to its validity, yet he adds that " the relation is always a circumstance which *creates suspicion and aids in the proof of an allegation of oppression and undue*

*advantage,* when there is gross inadequacy of price and other circumstances tending to show fraud." He also says " that the court is inclined to the opinion that the principle, as between trustee and *cestui que trust,* may be applicable to a case, when the conveyance is absolute upon its face, and the *fact of its being a mere security rests in parol proof,* and is controverted." This principle, as explained and defined in *Allen* v. *Bryan,* in the same volume at page 276, by the same eminent judge, is, " that in dealings between the trustee and *cestui que trust,* while not prohibited, are watched with great jealousy, and the trustee is required to show affirmatively that the dealing was fair and for a reasonable consideration." To the same effect is *Baxter* v. *Costin,* Busb. Eq., 262. So in *Whitehead* v. *Hellen,* 76 N. C., 99, it is said that " courts of equity look with jealousy upon all dealings between the trustee and his *cestui que trust,* and *if this mortgagor* had by deed released *his equity of redemption, we should have required the plaintiff to take the burden of proof and satisfy us that the man whom he had in his power, manacled and fettered by a mortgage and a peremptory power of sale, had, without undue influence and for a fair consideration, executed a release of his right to redeem the land.*"

The reason why a mortgagee is not allowed at the making of the deed to contract for a beneficial interest out of the mortgaged premises, is, says Chancellor Kent, " because the mortgagee from his situation wields a very *influential motive and has great advantage over the mortgagor in such a transaction.*" 4 Com., 143.

In deciding upon transactions between the parties to a mortgage, courts of equity, remarks another author, will "*jealously examine*" whether the mortgagee has taken advantage of the necessities of the mortgagor; when the loan has been coupled with or followed by any other transaction beneficial to the lender, the inequality in the situation of the parties will be *evidence that the dealing was produced by the*

*influence derived from the mortgage,* and on that ground it will be set aside as fraudulent.  2 Hov. Frauds, ch. 22, p. 130.

"To give validity to such a sale by the mortgagor," is the language of Mr. Justice SWAYNE speaking for the court in *Villa* v. *Podriquez,* 12 Wall., 323, "*it must be shown that the conduct of the mortgagee was in all things fair and frank,* and that he paid for the property what it was worth."

Although the equity of redemption may be released, yet it is "subject to the qualification," says another author, "that the court looks upon such transactions *with jealousy,* and will set aside a purchase where from the influence of his position, the mortgagee has bought at a less price than others would have given."  2 Jones on Mort., § 711.

The language of LORD REDESDALE to the same effect is quoted with approval by SIR JOHN STEWART in *Ford* v. *Olden,* 3 Law Rep. Eq., 461.

Mr. BIGELOW classes this among the confidential relations governed by the rule, as is mentioned in the former opinion, and reiterates the words of Mr. Justice SWAYNE, that "to give validity to such a sale by the mortgagor, it must be shown that the conduct of the mortgagee was in all respects fair and frank, and that he paid for the property what it was worth.  He must hold out no delusive hopes; he must exercise no undue influence; he must take no advantage of the fears or poverty of the other party.  Any indirection or obliquity of conduct is fatal to this title.  Every doubt will be resolved against him."  Big. Est., 259.

What practical force can be given to these expressions, declaring the jealousy and scrutiny with which such dealings are watched, unless it be meant that the naked production of the mortgage deed will not suffice unless accompanied with some evidence of the fairness of the transaction in which it had its origin? and what is this but another mode of saying that the presumption is against it and must be repelled?  Look at the incidents of the relation itself.

The mortgagee is the depositary of the legal estate, and holds it for the security of his own debt and then in trust for the mortgagor. He may enter upon the land or recover it by action for the purposes of the trust. He may sell and dispose of the land under the power conferred. Is not his influence potential and the mortgagor's condition dependent, if not to the same degree, as in other cases of trust? And why should the rule vary?

We have held that if he buys at a sale made under a prior mortgage, he does not acquire the title for his own personal benefit, but removes an incumbrance and charges the cost of it, as a prior lien, upon the property itself—and this because he cannot take advantage of his position to the injury of those whose interests are committed to his protection. *Taylor* v. *Heggie*, 83 N. C., 244, and the cases there cited.

We suppose when it is said that a release to the mortgagee is not obnoxious to the imputation of fraud, as in other trusts, reference is had to such as contain no power of sale, and the foreclosure of which must be sought in the action of the courts alone. But even if this was one of that class, there is the superadded trust growing out of the parol contract and adhering to the sheriff's sale and conveyance of the equity of redemption, and with this complication the case comes directly within the terms in which the court thinks in *Chapman* v. *Mull, supra.*, the unfavorable presumption will be raised.

We are gratified to find in the accompanying certificate of counsel, required in applications for a re-hearing, that it is not inconsiderately given, but is the result of research into the authorities and a careful examination of them. It was to secure this that the rule has been lately modified.

The extension of the rule, as indicated, to mortgages in the form so generally in use, and in which the foreclosure after default is left to the discretion of the creditor mort-

gagee, will tend to promote open and fair dealing between the parties, and the possession and production of evidence of the transaction when it is drawn in question. This will be of little inconvenience to the one and a great protection to the other. We must therefore adhere to our former ruling, and refuse to disturb the judgment.

No error.                    .                    Affirmed.