\*SUSAN BRUNER and others v. S. H. THREADGILL, Adm'r, and others.

*Evidence in land suit—Statute of Limitations — Mortgage—Trusts and Trustees.*

1. Evidence of the mental condition of a deceased mortgagor, directly bearing on the inquiry whether he in his life-time consented to a sale of the land by the mortgagee, cannot be excluded upon the ground that it tends to impeach the validity of the deed.

2. Evidence of the estimated value of a lot on the opposite side of a street

\*Mr. Justice Ashe having been of counsel, did not sit on the hearing of this case.

from that in dispute, is incompetent to show the value of the latter: it would introduce a new issue (the value of another lot) open to proof like the issue already before the jury.

3. The period from May 20th, 1865, to January 1st, 1870, shall not be counted to bar actions, or to presume satisfaction or abandonment of rights.

4. Mortgagee sells and conveys to one who reconveys to him; *Held,* (1) That his possession under such deed is not adverse to the mortgagor, for he was entitled to the possession upon the default of the mortgagor. (2) While a trustee cannot buy at his own sale, either directly or through an agent, yet the *cestui que trust* may elect to affirm the sale. (3) The mortgagor or his representatives, in such case, can call upon the mortgagee for an account at any time within ten years after the cause of action accrues.

( *Warren* v. *Makely,* 85 N. C., 12; *Edwards* v. *Jarvis,* 74 N. C., 315; *Hawkins* v. *Savage,* 75 N. C., 133; *Reynolds* v. *Cathens,* 5 Jones, 437; *Wittkowski* v. *Watkins,* 84 N. C., 456; *Froneberger* v. *Lewis,* 79 N. C., 426; *Patton* v. *Thompson,* 2 Jones' Eq., 285; *Brothers* v. *Brothers,* 7 Ired. Eq., 150; *Elliott* v. *Pool,* 3 Jones' Eq., 17; *Joyner* v. *Farmer,* 78 N. C., 196; *Dawkins* v. *Patterson,* 87 N. C., 384, cited, commented on and approved).

CIVIL ACTION tried at Fall Term, 1882, of ANSON Superior Court, before *Gilmer, J.*

Jacob Bruner, being indebted in three several notes given to George W. Willoughby for the purchase of a lot in the town of Wadesboro, described in the complaint and the subject of the present controversy, on March 19th, 1859, in order to secure the same, conveyed said lot by deed of mortgage to said Willoughby with a power of sale to be exercised in default of payment after a day intended to be fixed in a blank left for that purpose, but not filled up before execution and registration.

On the 21st day of May, 1866, under the advice of counsel that the omission to designate the time could not prevent a decree of foreclosure and sale on application to the court of equity, the mortgagor executed under seal a written instrument wherein it is recited that it was the intention of the parties to insert in the blank, as the day of default after which the land might be sold, the 1st day of January, 1861, and it should have been so specified. This writing, witnessed by counsel, was proved and admit-

ted to registration on November 16th, 1882. The mortgagor was, at the time of his assent to the sale, in great mental and bodily distress, suffering from a malady of which he soon afterwards died.

On December 1st, 1866, after due advertisement, the lot was offered at public sale and bid off at the price of $625 by one William H. Redfern (who acted as the auctioneer) for the mortgagee, under a previous arrangement that he should do so, made between them. The lot was then conveyed by said Willoughby to Redfern and by the latter reconveyed to the former on December 6th, 1866, for the recited consideration of $650, though no money was paid or received by either in carrying out their previous understanding and agreement.

Under the mortgage deed the mortgagor was to remain in occupation of the premises, as did he and his family, until the sale and up to January 1st, 1867, when Willoughby took and has held possession ever since, using it as his own. At this date the plaintiffs, the children and issue of deceased children of the said Bruner, then living, the heirs-at-law upon whom by their father's death and intestacy his equity of redemption descended, were all but one under the age of 21 years, their respective ages ranging from 22 to 6 years.

This action, commenced on March 28th, 1878, against the mortgagee, and upon his death revived against the defendants, his administrator, widow and only heir-at-law and the husband of the latter, has for its object a judgment annulling the deeds by which the mortgagee claims to have acquired an absolute estate, declaring the mortgage deed still in force, and the defendants to hold the lot on the trusts therein declared, and for all proper accounts to be taken in order to ascertain what is due under the mortgage and for leave to redeem.

The jury find upon issues submitted to them, in addition to the facts already stated, that the lot when sold was worth $1,500, that the mortgagor gave his assent to the mortgagee's making

the sale, as if the date of default had been specified as of January 1st, 1861, and that there has been no abandonment of the right to redeem by the plaintiffs.

Thereupon the court adjudged that the defendants held the lot, notwithstanding the transmission of the legal title through the impeached deeds upon the trusts of the original mortgage; and, to ascertain the relations of the parties to each other, ordered a reference to the clerk to take and state. an account of,

1. The amount due on the secured debts;

2. The rents and profits that were or ought to have been received by the mortgagee in his life-time, and by the defendants who have continued the occupancy of the lot since, as well as the deductions to be made for taxes and other expenditures paid in the protection of the property, and

3. The value of permanent improvements made during their possession, and to make report thereof at the next term.

From this judgment the defendants appealed.

*Messrs. J. A. Lockhart, J. D. Shaw* and *Hinsdale & Devereux,* for plaintiffs.

*Messrs. Burwell & Walker,* for defendants.

SMITH, C. J., after stating the facts. With this summary recapitulation of facts, we proceed to consider the successive rulings to which are taken the exceptions presented in the record.

1. The subscribing witness to the instrument, executed to supply the omission in the mortgage introduced to prove the execution, was permitted after objection to testify to the mental and physical condition of the mortgagor at the time. The objection is not pointed nor specific, but we understand it to be upon the ground of the tendency of the evidence to impeach the validity of the instrument or impair its force, as an assent to the sale by the mortgagee.

We do not see any sufficient reason for opposing the admission of the testimony, as directly bearing upon the inquiry whether

the mortgagor in his life-time gave consent to the sale; but if there were, it has been rendered harmless and the objection to its introduction removed by the affirmative finding of the jury on that issue.

2. There were different estimates of the value of the lot, at the time of the mortgage sale, given by witnesses; and a witness examined by defendant was asked to state how a lot on the opposite side of the street, specified, compared in value with this in dispute, and at what price it was sold in October, 1868. This question, on plaintiffs' objection, was disallowed.

The estimate of persons called on to testify as to the value of land is derived from actual sales of similar property at the place or in the vicinity; from the opinions of competent persons acquainted with such property, and from the personal knowledge and opportunities of observation possessed by the witnesses. Upon these an opinion as to the value of any particular lot rests, and is entitled to greater or less confidence, as the means of information and the individual capacity of the witness to form a correct judgment from experience or otherwise, are greater or less.

The credit due to the opinion may be arrived at by interrogating the witness as to his means of information and opportunities for forming an estimate, but it is not admissible so far to extend the examination as to introduce a new issue as to the value of another lot, open to corroborating and disproving evidence like that before a jury. The exclusion of the question is clearly warranted by the decision in *Warren* v. *Makely*, 85 N. C., 12, and for the reasons there given. The proposal here is in substance to ascertain what another lot actually sold for nearly two years afterwards, and how it compares in value with that in the mortgage, with no suggestion as to a similarity in condition or improvement, or any association except in proximity of locality. The testimony was properly rejected.

3. The instructions asked for defendants and refused are embodied in these propositions:

(a) Ten years having passed since the mortgagee entered into possession, and a longer time since default in the mortgagor, the law presumes an abandonment of the equity of redemption, and there being no rebutting evidence, that presumption must prevail.

(b) The statute of limitations and that raising the presumption of abandonment began to run in the bargainor's life-time, and continued to run against those who succeeded to his equitable rights.

Accepting either date, that fixed upon for the default or that when the trustee entered into possession, and excluding the interval during which the operation of the statute was suspended, ten years, the period prescribed to raising the presumption, had not expired. That this interval should not be counted in computing the time in cases like the present, is expressly held in *Edwards* v. *Jarvis*, 74 N. C., 315, where the defendant claimed by possession under a deed made in September, 1865, and again in *Hawkins* v. *Savage*, 75 N. C., 133, where the action was for a tort committed in March, 1867, SETTLE, J., who delivered the opinion, saying: "The time elapsed from the 20th day of May, 1865, to the 1st day of January, 1870, shall not be counted so as to bar actions on suits, *or to presume satisfaction or abandonment of rights*, save only that actions of debt, covenant, assumpsit or account upon any contract, demand or penalty incurred since the 1st (20th) day of May, 1865, and the remedies thereon, shall be the same as they were in the year 1860."

4. The possession of the mortgagee under the reconveying deed to himself as color of title, it is insisted, perfects the title and protects the estate from the plaintiffs' claims.

The proposition is not tenable so far as it relates to the legal title, for the mortgagee upon default was entitled to the possession, and no action for its recovery could have been successfully sustained by the plaintiffs, and it is only when those who could, and do not enter and sue, that the right of entry and action is

barred as to them.   *Reynolds* v. *Cathens,* 5 Jones, 437;  *Witt-kowski* v. *Watkins,* 84 N. C., 456.

5. That the mortgagee or trustee cannot purchase the trust property at his own sale, either directly or through the intervening agency of a third person, is too well settled by authority to admit of argument, unless his *cestui que trust* elect to confirm the sale and hold him to it; and this, not because fraud has been practiced, but for the reason that it may be; and the law will not sanction a proceeding that puts his personal and private interests in antagonism to his fiduciary obligations.   The subject is carefully examined and the previous cases so fully reviewed in *Froneberger* v. *Lewis,* 79 N. C., 426, that we deem it needless to make further references.   The right of election, however, resides in the *cestuis que trust,* who may affirm or disaffirm the sale. *Patton* v. *Thompson,* 2 Jones' Eq., 285; *Brothers* v. *Brothers,* 7 Ired. Eq., 150.   Even unsecured creditors have been, after many years, allowed to set aside a sale made by the trustee to an agent and a reconveyance to himself; and, even after, under proceedings in the court of equity by the trustee against the personal representative and infant heirs of the deceased bargainor, to compel them to elect, and their election to abide by the sale.   *Elliott* v. *Pool,* 3 Jones' Eq., 17.

The only serious difficulty we have felt in granting relief grows out of the time allowed to pass before the suit was begun, and a suggestion of RODMAN, J., that "perhaps it may be that the statute of limitations of three years on a parol promise may furnish the proper rule," made in the opinion in *Joyner* v. *Farmer,* 78 N. C., 196.

But our conclusion is, that no such restriction can be put upon the exercise of the right of the mortgagor and his representatives to call the mortgagee to an account of the trust estate, before the inaction and acquiescence give effect to the statutory inference of a surrender.   This would be clearly so, we think, under the limitations of the Code of Civil Procedure (not, however, applicable to the present case), since a time is prescribed for

bringing any action in the enumerated list, and a general limitation upon all others not mentioned, § 37.

There is certainly no limitation of time in which a secured party or the mortgagor must call on the mortgagee or trustee for an account, because there are no adversary relations between them, until the presumption of the statute is raised; and we do not think. these relations were changed by the action of the mortgagee in this effort to transmit the estate from, and, through the continuance of an agency, back to himself. These deeds as against the plaintiffs were, as if they had never been made, they electing so to treat the transaction.

In *Joyner* v. *Farmer, supra,* the plaintiff mortgagor was present at the sale and did not object, retained possession as tenant for a year, and received from the mortgagee the residue of the money for which the land sold after deducting the rent. There are no such recognitions on the part of these plaintiffs, and one only of them was at the sale, and all but one or two of them under age on January 1st, 1870, when the suspending act expired by limitation.

We are of opinion that they have not lost their right to bring this action from laches and delay. The recent case of *Dawkins* v. *Patterson,* 87 N. C., 384, is not repugnant to the views expressed, and it is there held that the mortgagee may sell and become himself the purchaser under an express contract of the mortgagor that he may do so, and when he gives an additional year for the redemption, as the consideration for the privilege. There is no error, and this will be certified.

No error.                                            Affirmed.