ALFRED JONES et al. v. R. S. PULLEN.

*Mortgagor and Mortgagee—Purchase by Mortgagee of Mortgaged Property — Ratification — Trust Relation — Presumption of Fraud—Rebuttal of Presumption.*

1. In the absence of ratification, the right of a mortgagor to avoid a sale under a power where the mortgagee has indirectly become the purchaser, is not barred by his laches for a shorter period than the statutory limitation of ten years.

2. Entry on land by a mortgagee who purchases at his own sale, upon surrender of possession by the mortgagor, is not of itself evidence of ratification of the sale by the mortgagor.

3. When a mortgagee with power of sale indirectly purchases at his own sale, the mortgagor may elect to avoid the sale whether or not it was fairly made and for a reasonable price.

4. Where a mortgagee with power of sale deals directly with the mortgagor and purchases from him the equity of redemption, there is,

115—30

by reason of the trust relation, a presumption of fraud, which, however (as decided in *McLeod* v. *Bullard*, 86 N. C., 210), may be rebutted by showing that the transaction was free from fraud or oppression, and that the price paid was fair and reasonable, in which case the mortgagor cannot avoid the sale, and a Court of Equity will grant him relief.

5. Where a mortgagee with power of sale, and expressly authorized by the mortgagor to purchase the mortgaged land at the sale, becomes the highest bidder, he is placed within the rule enunciated in McLeod's case (86 N. C., 210) and may hold the land, provided he rebuts the presumption of fraud arising from the trust relation.

6. A mortgagee having the right to acquire the equity of redemption by virtue of a sale under the mortgage which authorized him to purchase at the sale, the fact that a trustee, to whom the mortgagor had conveyed the equity of redemption, joined with a mortgagee in the sale and in the execution of the deed, cannot affect the result or bring it within the principle of *Taylor* v. *Heggie*, 83 N. C., 244.

7. While a mortgagee, with power of sale and authorized to become the purchaser, may execute a deed to himself upon the principle that a donee of a power may execute a deed in that capacity to himself, it seems, nevertheless, that the mortgage should contain an express power to that effect.

CIVIL ACTION, heard upon exceptions to referee's report, before *Hoke, J.*, at April Term, 1894, of WAKE Superior Court. The plaintiffs sought to recover from the defendant certain lands, which he had bought at a sale under a mortgage and deeds of trust executed by the plaintiff to him.

The action was begun October 13, 1893. The findings of the referee, Mr. R. O. Burton, were as follows:

" 3. On the ____ day of ____, 18__, one Elizabeth T. Jones died domiciled in Wake County, leaving a last will and testament, which was afterwards duly probated, and a copy of which is hereto attached, marked 'Exhibit No. 1,' as part of this report. The plaintiff Alfred Jones is the son of said testatrix, and the land mentioned in said will embraces, among other lands, that now in controversy in this action.

" 4. That on the 5th day of June, 1876, the devisees named

in said will, Alfred Jones, Needham P. Jones and Nannie P. Jones and Millard Mial, executed the deed, a copy of which is hereto attached, marked 'Exhibit No. 2,' as a part of this report. Said deed was duly proved and registered in Book 45, pages 1 to 6, of the Register's office of said county.

"5. That on the 28th day of April, 1883, to secure a bond of $3,000 executed by Alfred Jones to said Pullen, due and payable twelve months after date, with interest at the rate of eight per cent. per annum, and dated on said day, the said Alfred Jones and wife Lizzie C. Jones, and Millard Mial, executed unto the defendant R. S. Pullen a deed of mortgage on the land in controversy, which was duly probated, and registered in the Register's office of Wake County on May 7, 1883, Book 73, page 780, and a copy thereof is hereto attached, marked 'Exhibit No. 3,' as part of this report.

"6. That on the 20th day of August, 1883, the said Millard Mial and Alfred Jones, and Lizzie C. Jones his wife, to secure the bond of said Alfred Jones, of even date therewith, payable to said Pullen twelve months after date, with interest from date at eight per cent., payable semi-annually, executed unto A. W. Haywood a deed of trust on said land, which was duly proved, and was, on the 22d day of August, 1883, duly registered in the Register's office of said county, Book 74, page 591, and a copy thereof is hereto attached, marked 'Exhibit No. 4,' as part of this report.

"7. That on the 17th day of February, 1886, the said Alfred Jones and wife Lizzie C. Jones, and Millard Mial, executed unto Ernest Haywood a deed of trust on the lands in controversy, and one other tract of land in Pasquotank County, which was duly proved, and on the 2d day of March, 1886, was duly registered in the office of the Register of Deeds of said county, Book 87, page 699, and a copy thereof is hereto attached as part of this report, marked 'Exhibit No. 5.' The said trust deed secured not only a loan of $1,525 then made by said R. S. Pullen to said Elizabeth C. Jones,

evidenced by the bond of even date of said Elizabeth and
Alfred, payable twelve months after date, with interest from
date at the rate of eight per cent. per annum, payable semi-
annually, but also the aforesaid note or bonds of $3,000
and $500.

" 8. That in the early part of the year 1887, the land in
Pasquotank County was sold by the said Alfred and Eliza-
beth Jones, with the consent of said Ernest Haywood, trus-
tee, to one T. B. Hewett, for $3,000, and the defendant and
said Ernest Haywood afterwards released to him. The net
amount of the sale was $2,839.48. Of this amount, $1,515.37
was credited April 6, 1887, on the note for $1,525 aforesaid;
and the residue thereof ($1,324.11) was on July 15, 1887, cred-
ited on the note for $3,000. Said amounts were credited on
the date of their receipt by the defendant.

" 9. That on the 6th day of October, 1888, default having
been made in the payment of the debts aforesaid (except as
hereinbefore mentioned), the said R. S. Pullen, A. W. Hay-
wood, trustee, and Ernest Haywood, trustee, after having
duly advertised the land in controversy for sale at the court-
house door in Raleigh, under the aforesaid deed of mortgage
and the deeds of trust to A. W. Haywood, and to Ernest Hay-
wood, sold said land at public sale for cash at the said court-
house door, when and where J. S. Wynne, acting as the agent
of said R. S. Pullen, became the last and highest bidder at
the price of $4,000, and it was struck off to him, a deed was
at once executed to him, which was duly probated, and was
registered January 2, 1887, in the Register's office of said
county, Book 104, page 570, and a copy thereof is hereto
attached, as part of this report, marked ' Exhibit No. 6.'
Shortly thereafter the said J. S. Wynne conveyed said land
by proper deed to said R. S. Pullen, and the same was duly
registered in said county.

" 10. That the said sale was fairly and honestly conducted,
in conformity with the terms of the mortgage and trust deeds,

and there was no effort to suppress bidding. The land brought a fair price. There were no circumstances of (see report) fraud or undue advantage taken.

"11. That soon after said sale, to-wit, on the 17th of December, 1888, the said Alfred and Lizzie Jones surrendered the possession of said land to said R. S. Pullen, and he has held the possession ever since."

*Conclusions of Law.*

"1. That by virtue of the sale of October 8, 1888, and the deeds made in conformity therewith, the said R. S. Pullen acquired the title of said Alfred and Lizzie C. Jones, his wife, and Millard Mial, as owner, and ceased to be a mortgagee.

"2. That such title is a fee simple as to a half interest in said land, and an estate for life of said Alfred Jones as to the other half, with a contingent remainder to such of the children of said Alfred Jones as shall be living at his death. But if the said Alfred Jones shall die without any child living at his death, then the estate of said R. S. Pullen, in said half interest will be enlarged into a fee by virtue of the said deeds from said Alfred Jones, and the warranties and covenants in the aforesaid deed mutually executed between Alfred Jones, Needham P. Jones, Nannie P. Jones and Millard Mial. (Exhibit No. 2.)

"2. In the view I have taken of the case, the question of ratification does not arise."

The plaintiffs excepted to the report of the referee " for errors in the finding of fact and law, in that—first, the referee finds as a conclusion of law that the sale to R. S. Pullen, the defendant, was valid ; second, the referee finds the sale on October 6 or 8, 1888, was in every respect fair," etc.

The defendant excepted to that part of the second conclusion of law of the referee which declared and decided that such title was an estate for the life of said Alfred Jones as to one-half interest in said land, and with a contingent re-

mainder to such of the children of said Alfred Jones as are living at his death ; for that and because said referee, on the facts found by him in his report filed in this action, and on the pleadings herein, ought not to have made or come to any conclusion of law at all in this regard as this case is now constituted in this Court.

His Honor overruled the plaintiff's exceptions and sustained those of the defendant and rendered the following judgment, from which plaintiffs appealed.

" This cause coming on to be heard upon the report of the referee, R. O. Burton, Esq., and the exceptions filed to said report, it is now considered, ordered and adjudged that the exceptions filed by the plaintiffs to said report be and the same are hereby overruled, and that the exceptions filed by the defendant to said report be and the same are hereby sustained, and in all other respects said report is hereby confirmed. It is further considered, ordered and adjudged by the Court that by virtue of the sale of October 8, 1888, and the deeds made in conformity therewith, the said R. S. Pullen acquired all the estate, right, title, interest and property of the plaintiffs Alfred Jones and Lizzie C. Jones his wife, and of the other plaintiff, Millard Mial, in the Wake County land described in the pleadings as owner, and ceased to be a mortgagee, and that plaintiffs are not entitled to any account whatever of the defendant in this action. That the rights of the infant plaintiffs as to the title to the land in question are reserved and not passed upon in this judgment, and that the defendant recover of the plaintiffs herein the costs of this action, in which shall be included an allowance of $25 to the referee, R. O. Burton, Esq., for his services in this case."

*Messrs. T. M. Argo* and *T. R. Purnell*, for plaintiffs (appellants).

*Messrs. Haywood & Haywood* and *J. W. Hinsdale*, for defendant.

SHEPHERD, C. J.: On a previous investigation of this case, we were of the opinion that the decision in *Joyner* v. *Farmer*, 78 N. C., 196, would amply sustain the action of his Honor in denying the plaintiffs the relief prayed for. The delay of the plaintiffs of over five years after the sale and their surrender of possession (there being no fraud, and the price being reasonable) were sufficient under the principle of the above-mentioned case to bar the plaintiffs of their alleged right of election to set aside the sale. Our attention, however, has been called to the more recent case of *Bruner* v. *Threadgill*, 88 N. C., 361, in which it is said that "in the absence of affirmation the right of a mortgagor to avoid a sale under a power where the mortgagee has indirectly become the purchaser, is not barred by his laches for a shorter period than the statutory limitation of ten years." *The Code*, § 158. As the mortgagee had a right to enter under his legal title, the entry in this case would not alone be sufficient evidence of affirmation, and nothing further appearing the principle of Bruner's case would seem to apply. This renders it necessary to further investigate this case in the light of the other facts found by the referee, and in this we have had the aid of a second argument by counsel on each side. There is no question, according to our authorities, that if a mortgagee, with power to sell, indirectly purchases at his own sale, the mortgagor may elect to avoid the sale, and this without reference to its having been fairly made, and for a reasonable price. This is an inflexible rule, and it is " not because *there is*, but because there may be fraud." *Gibson* v. *Barbour*, 100 N. C., 192; *Froneberger* v. *Lewis*, 79 N. C., 426; *Cole* v. *Stokes*, 113 N. C., 270; *Dawkins* v. *Patterson*, 87 N. C., 384. If, however, the mortgagee with the power of sale deals directly with the mortgagor and purchases of him the equity of redemption, quite another principle applies. In such a case there is, by reason of the trust relation, a presumption of fraud, but the

mortgagee so purchasing may rebut this presumption by showing that the transaction was free from fraud or oppression, and that the price was fair and reasonable. The doctrine is fully discussed in *McLeod* v. *Bullard*, 86 N. C., 210, and need not be elaborated in this opinion. If the presumption of fraud is rebutted the plaintiff has no election to set aside the sale, and a Court of Equity will grant him no relief.

Now, if this be the rule applicable to a direct purchase of the equity of redemption, why should it not also apply to a case like the one before us, where the mortgagor has by his deed expressly authorized the mortgagee to become the purchaser? If the mortgagee can directly purchase, if the transaction is fair, why can he not, when the transaction is fair, purchase as the highest bidder at the sale, when expressly authorized to do so? In 1 Jones on Mortgages, 1883, provisions of this kind are said to be in general use where there is no statute authorizing the mortgagee to purchase at his own sale, and cases are cited which deny that the privilege should be strictly construed, and the author remarks that it is generally held that " under such a provision the Court will not interfere with a purchase by the mortgagee unless there be some other objection which would invalidate a purchase by anyone else under the same circumstances."

On the other hand, while the right to purchase is fully recognized, there are numerous authorities to the effect that the mortgagee so purchasing " will be held by a Court of Equity to the strictest good faith and the utmost diligence in the execution of the power for the protection of the rights of the mortgagor, and his failure in either particular will give occasion to allow the mortgagor to redeem."

In *Fox* v. *Mackrith*, 1 White & Tudor's L. C., 244, note, it is said: " The mortgagor may indeed dispense with the restraint by authorizing the mortgagee to sell to himself, if he is the highest bidder. This results from the right of every man to waive a rule intended for his benefit. But such

transactions will, notwithstanding, be closely scrutinized, and may be set aside if the sale is not conducted with entire frankness, and in a way to obtain the market value."

In *Gibson* v. *Barbour*, 100 N. C., 192, after denying the right of a trustee like a mortgagee to purchase at his own sale, and remarking that " a Court of Equity will not tolerate the attempt and give efficacy to what is done, when opposed by competent parties in interest," the Court proceeds as follows: " The cases to which the brief of counsel calls our attention are in no degree hostile to this universally accepted rule. That of *Dexter* v. *Shepard*, reported in 117 Mass., 480, simply decides that a trustee, expressly authorized under the deed to purchase at his own sale, and so might the Court, directing a commissioner interested in the trusts to make a sale, give him authority to bid, as a means of securing himself against loss, as was done in *McKay* v. *Gilliam*, 65 N. C., 130., although the fact does not appear in the report, *and so we think this may be allowable with the general consent of all who could otherwise make objection to the sale.*"

These remarks seem to recognize the right of the mortgagee to purchase under the circumstances of this case, and the numerous authorities cited by Mr. Jones from Courts of the highest respectability, such as New York, Massachusetts and Alabama, as well as the " reason of the thing," in our opinion, fully establish the proposition. In passing, we will observe that *Howell* v. *Pool*, 92 N. C., 450, cited by counsel, does not distinctly pass upon this question. Although we adopt this view, it is nevertheless true that the mortgagee is still the agent or trustee of the mortgagor, and while he may purchase under such a provision, we are of the opinion that the exercise of such authority should be watched with a most jealous eye by the Courts. Indeed, we think it more consistent with the principles of equity, as enunciated by this Court, to place such a purchaser within the rule declared

in McLeod's case, *supra*, that is to say, that being still a trustee, although with power to purchase, there is a presumption of fraud, and that it lies upon him to rebut such presumption. If he does this, we see no reason why he should not hold the land as if he had purchased the equity of redemption directly from the mortgagor.

The mortgagor, in effect, says : " You may sell my land to the highest bidder, and if you act fairly and purchase at a reasonable price you may yourself become the purchaser." If this agreement is honestly carried out, why should the mortgagor have the right to repudiate it, and especially in the present case, when he has surrendered the possession after such sale, and the defendant has occupied the land for over five years.

The referee finds that "the sale was fairly and honestly conducted, in conformity to the terms of the mortgage and trust deeds, and there was no effort to suppress the bidding. The land brought a fair price. There were no circumstances of fraud or undue advantage taken." The right to purchase having been conferred upon the mortgagee, we think our case is not within the principle that the mortgagor may avoid the sale, even though it be fair and the price reasonable.

Under this view, the defendant had a right to acquire the equity of redemption by virtue of the sale under the mortgage and, this being so, the principle of *Taylor* v. *Heggie*, 83 N. C., 244, does not apply. The equity of redemption was conveyed subsequently by the mortgagors to Mr. Haywood, in trust, it seems, to secure the payment of the mortgage debt, though the trust provided that it shall be subject to the mortgage, and, as the mortgagee had the right to purchase at his own sale under the mortgage, the fact that the trustee joined him in the sale, by virtue of the trust, and also joined in the execution of the deed to Wynne (who afterwards conveyed to the defendant), cannot affect the result. Inasmuch as the legal title passed to Wynne, we have not deemed it necessary

to pass upon the supposed difficulty of the mortgagee (when a direct purchaser) executing a deed to himself. This may be done upon the well-settled principle that the donee of a power may execute a deed in that capacity to himself. Whether the mortgage should contain an express power of this kind is not before us, but it has been held to be necessary by several Courts, and this view seemed to be entirely sound. All that it is necessary, however, to decide in the present case, is that, where the legal title has passed through a third person to the mortgagee with power to purchase, the power will be so far recognized as to place such purchaser within the principle of *McLeod* v. *Bullard, supra.*

Affirmed.