The court submitted the following issues affecting the apellants [appellants]:
"1. Was there an arrangement and understanding, at or before the time of executing the deed to L. E. and C. E. Corpening, between the grantor and grantees, that the bid of Welch Galloway was to be assigned and the land conveyed to said L. E. and C. E. Corpening, and that defendant R. M. Tuttle was to share with them in the profits of any future sale or was to receive any compensation individually for its execution?" Answer: "Yes."
"4. Is this action barred by the statute of limitations, as to the plaintiffs or any of them; if so, as to which of them?" Answer: "No."
From the judgment rendered upon these issues the defendants R. M. Tuttle, C. E. Corpening, and L. E. Corpening appealed.
The plaintiffs and the defendant R. M. Tuttle were tenants in common of five tracts of land in Transylvania County, containing some 3,200 acres. R. M. Tuttle owned an interest of one twenty-seventh and was the general agent of his cotenants, his brothers and other near relatives, in the management and control of the land. In April, 1901, R. M. Tuttle caused a special proceeding to be commenced in the Superior Court of Transylvania County for the purpose (487) of selling said lands for partition, to which his cotenants were made copetitioners and parties of record. A decree of sale was duly entered, and R. M. Tuttle was appointed, commissioner to make the sale. On 7 August, 1901, the lands were sold, and bid off by Welch Galloway, Esq., for the sum of $2,100, and, upon recommendation of the commissioner, the sale was confirmed. On 10 September, 1901, said Galloway assigned his bid to E. H. and S. L. Tuttle, sons of R. M. Tuttle, who, in turn, transferred the bid to C. E. and L. E. Corpening, to whom the commissioner, R. M. Tuttle, executed a deed, in consideration of $2,100 purchase money, on 22 December, 1902. On 22 February, 1906, the plaintiffs commenced this action to set aside said special proceeding and the sale and deed made in pursuance thereof, upon the ground of fraud, and to convert the defendants Corpening into trustees for their benefit.
1. On the trial the defendants tendered certain issues and duly excepted to those submitted. We think the issues submitted fully present every phase of the controversy. The exact form of the issues is *Page 355 
immaterial, if, under them, each party has an opportunity to present evidence of the facts relied upon. The issues submitted in this case arise upon the pleadings and intelligently present to the jury the contentions of the parties. Shoe Co. v. Hughes, 122 N.C. 296. The true test is, Did the issues afford the parties opportunity to introduce all pertinent evidence and apply it fairly? Black v. Black, 110 N.C. 398; Pretzfelder v. Ins.Co., 123 N.C. 164. Measured by that test, the issues are sufficient. The form of the first issue rendered it unnecessary to submit the separate issue tendered by the defendants Corpening, as to whether they were bonafide purchasers for value, and without notice of the alleged fraud. Under the first issue his Honor submitted that contention clearly to the jury, when he charged them that, "If the bid was assigned to the Corpenings in good faith on their part, and they had no notice of the fact of the bid being by Galloway for R. M. (488) Tuttle, then their title is good.
The theory upon which the plaintiffs rest their case against the Corpenings, as embodied in that issue, is that they were participants in a legal fraud, perpetrated upon his cotenants, these plaintiffs, by R. M. Tuttle. Failing to establish that, they would not be entitled to recover.
It is not necessary, in order to set aside the deed and decrees of sale herein impeached, that the Corpenings should be convicted of a crime, or of a dishonorable transaction, as such terms are commonly understood. R. M. Tuttle occupied a fiduciary relation to his contenants, both as their general agent in the control and management of the land and also as a commissioner appointed by the court to make sale of it. It is elementary that he could not lawfully purchase at his own sale, nor procure any one else to do it for him. He could not lawfully speculate in the land for his own benefit, nor do any other act detrimental to the interest of those whom he had undertaken to serve. His duty was to make the land bring the best price obtainable, and to act for plaintiffs and advance their interests. If the Corpenings, knowing the relation which Tuttle, as commissioner in the special proceeding, bore to the parties thereto, aided and abetted him in purchasing the land for himself and his sons, and for their joint benefit, with a view to speculate in it on joint account, they would be particepscriminis in a legal wrong, however ignorant they may have been of the unlawful character of such transaction. If such facts are true, they could not possibly be classed as "innocent purchasers," under any known definition of the term. They would be guilty, at least, of constructive fraud, such as the law infers from certain circumstances, regardless of actual dishonesty of purpose. In aiding and abetting the commissioner trustee in committing such fraud upon his fiduciaries, they could not occupy any better position than the commissioner himself. *Page 356 
(489) That brings us, naturally, to the consideration of the sufficiency of the evidence, a point raised by the motion to nonsuit and argued with much earnestness by the learned counsel for defendants.
The nature of fraud is such that it can seldom be established by direct or positive proof. In the nature of things, resort must be had to the evidence of circumstances. It is now well settled that such evidence will support the finding of fraud, if it is sufficient to reasonably satisfy the mind of the judge or jury, as the case may be. Rea v. Missouri, 17 Wallace, 532; Reed v. Noxon, 48 Ill. 323; Sears v. Shafer, 6 N.Y. 268.
As to the evidence against the defendant R. M. Tuttle, there can hardly be a serious controversy as to its sufficiency. It is most plenary. It tends to prove that he was the trusted agent of his cotenants, in charge of these lands and fully acquainted with their character and value, and that, taking advantage of his position, he formed the design to acquire these lands for his own benefit, at much less than their real value; that, without consulting some of the owners, he caused the special proceeding to sell for partition to be instituted, and that he kept them in ignorance of the pending sale. He had himself appointed commissioner, although a party to the proceeding, so that he could control the sale and easily secure its confirmation, if desirable in his own interest to do so. He procured Galloway (who in this matter appears to be innocent of any wrongful purpose) to bid off the land for his (Tuttle's) benefit, and he negotiated the transfer of the bid, through his two sons, to the Corpenings, in order that he and his sons might take advantage of a "good thing" and share in the profits, and, as a part thereof, he and his sons received a lot of machinery and the surrender of a thousand-dollar note due by the father. The evidence offered by plaintiffs tends, we think, to establish such facts.
(490) While the evidence competent as against the Corpenings is not of the same probative force as that against Tuttle, it is fully sufficient to have warranted his Honor in submitting the question to the jury as to their wrongful complicity with Tuttle, the commissioner. There is evidence tending to prove that they are nearly related by marriage, and that the two sons of R. M. Tuttle are the nephews of the Corpenings. That they knew of the fiduciary relation which R. M. Tuttle occupied towards plaintiffs can scarcely be denied, for they took their title deed from him as commissioner and paid him the sum for which the land was bid off. There are facts and circumstances in evidence from which a jury might well infer that Galloway had bid off the land for R. M. Tuttle's benefit and at his request, and that the Corpenings must have been aware of it. From these facts and circumstances a more important inference is warranted, to the effect that an understanding existed between the Corpenings and their two nephews, *Page 357 
looking to a division of profits, in which they and their father were to share. There is evidence tending to prove that on account of this venture the Tuttles received from the Corpenings a lot of machinery and the note of R. M. Tuttle, which he owed, for $1,000. Declarations of one of the Corpenings to M. H. Tuttle tend to show that R. M. Tuttle was believed by them to be guilty of some breach of trust in this matter, which might necessitate his leaving for Canada. The Corpenings employed to represent them the same attorney who bid off the land for Tuttle; and, in addition, there is some evidence of the withholding of certain deeds belonging to plaintiffs, and necessary to their chain of title, with a view to shutting off suit, indicating a purpose, if possible, to prevent investigation. There is evidence tending to prove that $2,100 is a very inadequate price for the land; that there is some 3,200 acres of it, worth, in the estimate of some witnesses, from $6,000 to $15,000, and that the Corpenings were acquainted with its true value. (491)
There was much evidence submitted by defendants in rebuttal and tending to prove that the Corpenings acted in good faith in the purchase of the land.
The charge of his Honor appears to us to have put the issues before the jury fairly and clearly, and while it may not be entirely free from error, it is of such a character as is evidently harmless, and does not constitute reversible error so as to warrant us in granting a new trial upon the first issue.
In charging that the burden of proof was on the plaintiffs to satisfy the jury by a preponderance of the evidence, the judge committed no error. This is not an action to convert the defendants into trustees because they purchased the legal title in trust for plaintiffs, or to correct a mistake in a deed, or like the cases where the law required much more than a preponderance of evidence. The plaintiffs seek to set aside the sale, deed, and decrees, upon the ground that they are fraudulent and were made at the instance of R. M. Tuttle, the commissioner, with purpose and intent to defraud plaintiffs of their property. "It is not, however, necessary, in order to establish the fraud, that direct, affirmative, or positive proof of fraud be given. In matters that regard the conduct of men, the certainty of mathematical demonstration cannot be expected or required. Like much of human knowledge on all subjects, fraud may be inferred from facts that are established." Kerr on Fraud and Mistake, p. 384. The distinction between that class of cases wherein clear, cogent, and convincing proof is required and that class where a preponderance of the evidence is sufficient is clearly drawn in the learned opinion of Mr. Justice Avery in Harding v.Long, 103 N.C. 1. The Encyclopedia states that, according to the overwhelming weight of authority, fraud need not be established beyond a reasonable *Page 358 
doubt, but that "a preponderance of the evidence, as in any other civil case, is sufficient, provided the proof is clear and strong enough to preponderate over the general presumption that men are honest and do not ordinarily commit frauds, and reasonable enough to satisfy (492) the understanding and conscience of the judge or jury." If it does, then it is sufficient, both at law and in equity.
2. The remedy of the plaintiffs is the one they have pursued, and not by motion in the cause, as contended by defendants. The Corpenings are not parties to the special proceeding, and if they were, the proper method to impeach judicial proceedings for fraud is by a civil action, and not by motion. Peterson v. Vann, 83 N.C. 118; McLaurin v. McLaurin, 106 N.C. 334.
3. His Honor charged the jury that, "If the said Corpenings took as trustees, the statute of limitations would not bar the plaintiffs from bringing action until ten years after the rendition of said decree in said special proceeding." In this we think his Honor mistook the character of the action and the relation of the Corpenings to the plaintiffs. There was never any contractual relation between them, and the Corpenings have never voluntarily assumed any relation of trust or confidence toward plaintiffs. The legal title has never vested in them by the voluntary act of the plaintiffs, but solely in consequence of the defendant commissioner's own wrongful and tortious acts. They are trustees ex maleficio, not excontractu. The legal title which vested in the Corpenings by virtue of the sale, deed, and decree of confirmation has been destroyed and made void, abinitio, by the finding of the jury and the decree of the court. Consequently, there is no legal title to attach a trust to, because, unless this action is barred by the statute, all those proceedings are void and the title never vested. The case therein differs materially from that class of cases where a trustee or mortgagee, holding the legal title, buys at his own sale, has the title conveyed through another to himself, and takes possession. In such cases the legal title has never been out of him and he has continued to hold it in trust during his occupancy, and a mortgagor or (493) cestui que trust may bring him to account within ten years. Bruner v. Threadgill, 88 N.C. 366; Jones v. Pullen,115 N.C. 471.
The gravamen of the complaint is that the sale, decree, and the deed were made by reason of a fraudulent agreement to deprive the plaintiffs of their property, and are, therefore, void. It follows that the action must be instituted within three years after actual discovery of the fraud by plaintiffs. Revisal, sec. 395, subsec. 9; Day v. Day, 84 N.C. 408. This section originally applied to cases of fraud, cognizable only in a court of equity under the former system, which would embrace *Page 359 
this case. By amendment, the scope of the section has been extended to all cases of fraud cognizable at law or in equity. The statute only runs against those not under disability, and as to those only from the date of the discovery of the fraud.
The fact that the commissioner made a deed to the Corpenings on 22 December, 1902, if registered, would not even put the plaintiffs upon inquiry, much less fix them with notice that a fraud had been committed, as there is no evidence of that upon the face of the deed. The statute having been pleaded, the plaintiffs should reply, setting out, by way of avoidance, the time when they aver the fraud was discovered, the burden being upon them to prove the facts necessary to repel the statute. Stubbsv. Moltz, 113 N.C. 458. The plaintiffs will be allowed to file such replication, to the end that proper issues may be submitted to the jury bearing upon the plea of the statute of limitations.
4. The verdict in this case was rendered on Sunday morning, in open court, and recorded. By consent of counsel, the court continued the motion for judgment, to be heard at Asheville on 14 September, 1906, when and where judgment, was signed. Defendants excepted. There is no merit in the exception. The rendition of the verdict on Sunday was valid. Rodman v.Robinson, 134 N.C. 507.
We have examined with care all the other assignments of error (494) not herein commented on, and think that they are without merit.
As the two issues are distinct and not at all connected, we award a new trial on the one issue which relates to the statute of limitations.
Let the costs of this Court be equally divided between the plaintiffs and defendants.
Partial new trial.
Cited: Spruill v. Columbia, 153 N.C. 48; Gallimore v. Grubb,156 N.C. 577; Lumber Co. v. Mfg. Co., 162 N.C. 397; Hardware Co. v.Buggy Co., 170 N.C. 301; Ewbank v. Lyman, ib., 508, 509; Sanderlinv. Cross, 172 N.C. 243. *Page 360 
[EDITORS' NOTE: THIS PAGE IS BLANK.] *Page 361 
(495)